754 So.2d 1006 (1999)
Leo JOHNSON
v.
Duane STEELE, et ux.
No. 98 CA 1726.
Court of Appeal of Louisiana, First Circuit.
September 24, 1999.
*1007 Damon G. Miley, A. Wayne Stewart, Albany, for Plaintiff/Appellant, Leo Johnson.
Peter J. Losavio, Jr., Baton Rouge, for Defendants/Appellees, Duane Steele and Tonya Steele.
Before: CARTER, C.J., LeBLANC, and PETTIGREW, JJ.
CARTER, C.J.
This is an appeal from a judgment dismissing plaintiffs suit against defendants, Duane and Tonya Steele. Plaintiff, Leo Johnson, filed suit seeking payment pursuant to an oral contract to form and pour a concrete driveway and patio on defendants' property. Defendants had refused to pay because they were dissatisfied with the finished product.

BACKGROUND
Duane and Tonya Steele are homeowners in Walker, Louisiana. The concrete slab which served as the foundation for their home was poured by Willie Turner, a certified contractor. Defendants subsequently hired Mr. Turner to pour the foundation for a shop that they had built on their property. Defendants were pleased with the concrete work performed by Mr. Turner.

FACTS
On April 28, 1997, Duane and Tonya Steele were approached at their home by Reginald Stewart to discuss Mr. Stewart forming up and pouring a driveway on defendants' property. During this discussion, Mr. Stewart represented that he worked for Willie Turner and that he was doing Mr. Turner's work while Mr. Turner was out of the country. Mr. Stewart did not represent that Mr. Turner would be performing the work. Unbeknownst to Mr. Steele, Mr. Stewart had never formed and poured concrete on his own before. He had served only as a helper to Mr. Turner.
After discussing the job, the Steeles and Mr. Stewart agreed on a price to form up and pour the driveway, which price included all materials except for the concrete.[1] The price also included the cost of putting a "finish" on the concrete. The parties dispute whether the agreed price was $625, as asserted by the Steeles, or $650, as asserted by Mr. Stewart. The work was scheduled to begin the next morning.
Apparently, between the time that Mr. Stewart and the Steeles agreed on a price *1008 and the next morning, Mr. Stewart made an agreement with plaintiff/appellant, Leo Johnson, to share the labor and the profit related to the job scheduled to begin at the Steele's house on April 29. Like Mr. Stewart, Mr. Johnson had served only as a helper on forming and pouring concrete jobs before the job at the Steele's home.
Both Mr. Stewart and Mr. Johnson arrived at defendants' house the morning of April 29. While they were forming the driveway, Mr. Steele approached Mr. Stewart about performing additional work. The additional work entailed forming and pouring a patio behind defendants' house. They agreed on a price to cover the cost of this additional work. Again, the parties disagreed at trial about the exact price for the additional work. Mr. Steele contends they agreed to an additional $300, whereas, Mr. Stewart asserts that Mr. Steele agreed to pay an additional $600.
Mr. Johnson and Mr. Stewart worked throughout the day and into the night to complete the job. They contend that as each phase was completed, Mr. Steele would give his approval to their work. However, as evening approached, friends of Mr. Steele began to congregate and drink alcohol at Mr. Steele's home. As it grew later in the evening, Mr. Steele began to express general dissatisfaction with the quality of plaintiff and Mr. Stewart's work. By the time that the job was completed around 2:00 a.m. the next morning, Mr. Steele had told plaintiff and Mr. Stewart that he was not going to pay them because he was not happy with the job. Particularly, Mr. Steele did not like the finish applied to the concrete by plaintiff and Mr. Stewart. Mr. Steele also noticed that the old concrete, which was adjacent to the new concrete, was beginning to crack.
Because of his dissatisfaction with the performance, Mr. Steele asked Steve Norder, a sales representative for Parish Ready Mix, the concrete company that supplied the concrete for the job, to examine the slab poured by plaintiff. Mr. Norder opined that it was one of the worst finishes he had ever seen and it would require total replacement of the driveway and patio. It was also the opinion of Mr. Norder that the concrete trucks were out longer than they should have been for a job the size of Mr. Steele's. Mr. Norder believed that the concrete was cracking because plaintiff and Mr. Stewart took too long to pour and finish the concrete. Accordingly, defendants refused to pay plaintiff and Mr. Stewart for the job.

PROCEDURAL HISTORY
Mr. Johnson filed suit against Mr. and Mrs. Steele on May 19, 1997, seeking payment under the contract to do the concrete work. In the petition, Mr. Johnson specifically alleged that "he completed this task as agreed and that the Defendants have failed and refused to pay him...." Defendants answered the suit In Proper Person, generally denying the allegations that they were indebted to plaintiff, that they had entered a contact to do concrete work, and that plaintiff completed the task as agreed. A bench trial was held on January 28, 1998.
The trial court heard testimony from Mr. Stewart, Mr. Johnson, Mr. Norder and the Steeles. Mr. Norder was accepted by the court, without objection from plaintiff, as an expert in concrete finishing. Also without objection from plaintiff, Mr. Norder testified as to the quality of the job performed by plaintiff and Mr. Stewart at the Steele's home.
Subsequently, when Mr. Steele testified, his counsel sought to introduce photographs of the job performed by plaintiffs. Counsel for plaintiffs objected to the relevance of the photographs, arguing that "[i]f the pictures are being shown for the purpose of showing that they feel that the job was defective, that was an affirmative defense and it should have been urged at the time of answering the petition." The objection was overruled.
*1009 At the conclusion of the trial, the trial court ruled in favor of defendants and dismissed plaintiff's suit. In support of its ruling, the trial court stated as follows:
It's apparent to me that the plaintiffs needed some work, so they went out and hustled up some work. But in so doing, Mr. Stewart, in essence, held himself out to be an expert and made an agreement to finish the job and implied in that agreement was a failure to do so in a workmanlike fashion.
The evidence is un-controverted, and particularly evidence of the gentleman that represented the Ready Mix [C]ompany, Mr. Norder, that the job is going to have to be redone.
The photographs collaborate that, and in particular, I think a picture speaks louder than a thousand words. But it's clear that both sections of the job hold water, that the edges are uneven and where the new concrete meets the old. It's just ugly in appearance which easily could have been resolved with some strips. There's at least a half inch difference in the level. It's just a lousy job. And I think that the defendants really began to realize that the next morning after they got up.
.... I think it was the plaintiffs' job. It was their business to do it in a proper fashion. And I don't see where they did.
As I said, it holds water, it's unlevel, it's ugly, the job was done much too slowly. And the reason for that is there were too few people out there working the concrete. No expansion joints. So, I think, basically what we have is a very poor quality job, it's going to have [to] be redone.
Plaintiff appealed asserting a single assignment of error: "The trial court committed error in allowing testimony regarding a defense that was not pleaded."

DISCUSSION
Plaintiff argues that the trial court should not have allowed the introduction of the photographs at trial because defendants did not raise unworkmanlike performance as an affirmative defense in their answer. Accordingly, plaintiff contends he had no time to prepare against a defense that the work was not done properly.
The defendant is required to affirmatively set forth in his answer any matter constituting an affirmative defense on which he will rely. LSA-C.C.P. art. 1005. The purpose of the requirement that certain defenses be affirmatively pleaded is to give the plaintiff fair and adequate notice of the nature of the defense and, thereby, prevent last minute surprise to the plaintiff. Hanks v. Wilson, 93-0554, p. 6 (La.App. 1st Cir. 3/11/94); 633 So.2d 1345, 1348. An affirmative defense raises new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating plaintiff's demand on its merits. Hanks, 633 So.2d at 1348. LSA-C.C.P. art. 1005 contains a non-exclusive listing of affirmative defenses. Although not specifically listed as an affirmative defense, an allegation of defective or unworkmanlike performance is an affirmative defense. Brightway Signs, Inc. v. Sharkey, 457 So.2d 758, 759 (La. App. 1st Cir.1984). However, when a plaintiff files suit for recovery of the balance due on a contract and alleges that the contract has been performed, a defendant's general denial puts those issues of performance at issue. Accordingly, nonperformance is not a special defense which must be affirmatively pled. Brightway Signs, 457 So.2d at 760.
On appeal, defendants assert that the substandard quality of the alleged performance by plaintiff constitutes nonperformance. This argument is premised on the undisputed testimony at trial that the project would have to be torn up and completely redone.
*1010 We recognize that plaintiff formed and poured the concrete driveway and patio. However, we note that plaintiff is seeking to collect for work he and Mr. Stewart performed, but which work must be torn up and completely redone because the quality of the performance was so poor. This was established by the testimony of Mr. Norder, and plaintiffs did not dispute or object to Mr. Norder's expert opinions. In finding that the job was done so poorly that it is the equivalent of nonperformance, we distinguish this case from one wherein only repair work is needed to achieve the desired result. Instead, we reiterate that defendants will have to hire and pay someone to tear up the very work performed by plaintiff and Mr. Stewart and redo the driveway and patio. Practically, this cannot constitute a performance, as contemplated by the affirmative defense of unworkmanlike performance. Because we find that the gravely substandard work, which will have to be completely redone, is the equivalent of nonperformance, it was not necessary for defendants to plead the affirmative defense of nonperformance. Accordingly, the trial court did not err in admitting the photographs that depicted the allegedly completed project.
Furthermore, we note that plaintiffs petition alleges that the contract had been performed "as agreed." Defendants denied this allegation. It is clear from the record that defendants did not agree to a performance, the substandard quality of which would necessitate having to redo the entire job. Thus, this allegation by plaintiff raised the issue of the quality of the performance. By generally denying the allegation, the performance "as agreed" to by the parties, was put at issue and the photographs depicting the quality of the project were properly admitted into evidence.
Finally, the purpose behind the affirmative defense requirement is not thwarted by our holding in this case. By his own testimony, plaintiff cannot claim that either he or Mr. Stewart were surprised at the trial by defendants' contention that the driveway and patio were not properly formed and poured. Plaintiff testified that while he was still working on Mr. Steele's property, he was advised that the job was not satisfactory and thus, they would not be paid. When plaintiff returned to Mr. Steele's home on the morning after they finished the job, he was again informed by Mr. Steele that Mr. Steele did not like the finished product. Therefore, plaintiff cannot reasonably contend that he lacked notice of defendants' dissatisfaction with the quality of the driveway and patio. See Stevens v. Winn-Dixie of Louisiana, 95-0435, p. 9 (La.App. 1st Cir.11/9/95); 664 So.2d 1207, 1213.

CONCLUSION
For the reasons set forth in this opinion, we find no error in the trial court's admission of the photographs of the driveway and patio into evidence, nor in its judgment in favor of defendants, dismissing plaintiffs suit. The trial court judgment is affirmed. Costs of this appeal are assessed to plaintiff.
AFFIRMED.
LeBLANC, J., concurs.
PETTIGREW, J. concurs with results and assigns reasons.
PETTIGREW, J. concurring.
I disagree with the view expressed by the majority that this is a case involving the nonperformance of a contract. In my opinion, this is a defective or unworkmanlike performance case.
The facts reveal that plaintiff contracted to form, pour and finish a concrete driveway and a patio for defendants. While plaintiff rendered performance under the contract, his performance was substandard. An allegation of defective or unworkmanlike performance is an affirmative defense that defendants did not raise in their answer.
*1011 Nevertheless, plaintiff failed to object to the testimony of Steve Norder who was offered by the defense and qualified as an expert in concrete work. Mr. Norder testified as to the defective and unworkmanlike performance of the plaintiff. Due to plaintiffs failure to object to Mr. Norder's testimony, the pleadings were enlarged to include the affirmative defense of defective or unworkmanlike performance. Because the pleadings had been enlarged to include this defense, the trial court did not commit error allowing the introduction of the pictures of the work. I therefore concur in the results reached by the majority.
NOTES
[1] Mr. Steele was handling the purchase of the concrete from Parish Ready Mix.