984 So.2d 800 (2008)
Joseph B. DUPONT, Sr.
v.
Carl HEBERT.
No. 2006 CA 2334.
Court of Appeal of Louisiana, First Circuit.
February 20, 2008.
Writ Denied May 9, 2008.
*802 Joseph B. Dupont, Jr., Dupont, Dupont, & Dupont, Ltd., Plaquemine, LA, for Plaintiff-Appellant, Joseph B. Dupont, Sr.
C. Jerome D'Aquila, New Roads, LA, for Defendant-Appellee, Carl Hebert.
*803 Before PARRO, KUHN, and DOWNING, JJ.
PARRO, J.
This suit involves a petition by a property owner to enforce a servitude so as to prohibit a neighboring property owner from interfering with the use of a servitude of passage. Following a new trial, the trial court dismissed both the main demand and a reconventional demand. Only the petitioner appealed. For the following reasons, we reverse and render judgment in favor of the petitioner.

Factual Background and Procedural History
Joseph B. Dupont, Sr. (Dupont) was a co-owner of multiple rural lots, including Lot 20, of the Edison Berthelot Partition. Dupont had a camp located on his property. In 1977 or 1978, dirt from a pond that was dug on Dupont's property was used by him to form a road running in an easterly direction between Lot 20 and the adjacent lot to the south (Lot 19 of the Edison Berthelot Partition). The western boundary of Lots 19 and 20 fronted Louisiana Highway 75 (Hwy. 75). At that time, Lot 19 was owned by Oswald J. Vaughn and his wife.
The Vaughns sold portions of Lot 19 and other lots of the Edison Berthelot Partition to Carl j. Hebert (Hebert) by an act of cash sale dated August 4, 1994. In this act, the Vaughns disclosed that the property was subject to a "40 foot servitude of passage of which 20 feet is dedicated by vendor for servitude of passage along Parcel 19 in a East West direction" from Hwy. 75. Hebert resided on part of his property and used other portions for the operation of a turtle farm and a crawfish farm. At the trial of this matter, Hebert acknowledged the existence of a 20-foot servitude on his property. Although no further documentation was offered relative to the creation of this servitude, the parties do not dispute that the other 20 feet of the 40-foot servitude burdened the southern, adjacent portion of Lot 20.[1]
In a "Servitude Agreement" dated November 6, 1996, a 50-foot servitude over portions of Lots 19 and 20 was granted to the Iberville Parish Police Jury (Police Jury) by adjacent property owners, including Dupont and Hebert. The agreement provided for the creation of a right-of-way servitude for the construction, improvement, and maintenance of a roadway, L & L Road, extending in an easterly direction from Hwy. 75 for approximately 900 feet. Thus, the 50-foot servitude overlapped the 40-foot servitude for a distance of 900 feet from Hwy. 75, burdening the northern portion of Hebert's property by an additional five feet. The servitude agreement authorized the Police Jury to enter the properties beyond the limits of the right-of-way for the purpose of excavating, constructing, and maintaining lateral drains and/or channel changes required for the proper and adequate drainage of the roadway. The Police Jury constructed and maintained an asphalt roadway down the center of the 50-foot servitude.
In 1997, Hebert filed an application with the United States Army Corps of Engineers (Corps of Engineers), seeking permission to construct a turtle pond in the *804 low-lying area behind his home. After receiving permission and constructing the turtle pond, he later built a crawfish pond, which extended across the rear or easterly portions of Lots 19, 20, and 21. A portion of each of these projects encroached on the 40-foot area on which the servitude of passage existed. Subsequently, with the permission of the Police Jury, Hebert put up a wooden fence near his home site adjacent to the asphalt roadway and within the Police Jury's 50-foot servitude.
When their friendship turned sour, Dupont filed suit against Hebert to enforce the two servitudes. Dupont alleged that Hebert caused or allowed to be constructed a fence, levee, building, and pond within the servitudes of passage that encumbered Lot 19. Dupont averred that despite demands to remove these encroachments, Hebert failed to do so. In his answer, Hebert made a general denial of the allegations in Dupont's petition and reconvened, seeking the removal of a carport, overhang, and pond that had been constructed by Dupont within the servitudes of passage that burdened Lot 20. In his answer to the reconventional demand, Dupont averred that the carport and pond were constructed before the existence of the servitudes.
In opposing a motion for a summary judgment that had been filed by Dupont, Hebert indicated that his encroachment on the servitude was a result of the construction of a turtle farm to which Dupont had consented in a letter dated October 22, 1997, to the Corps of Engineers. Dupont noted that the letter simply indicated that he had no objection to the construction of the proposed turtle farm requested by Hebert. He urged that the letter in no way expressed or implied consent to an encroachment on the servitude. Hebert contended that the encroachment, which was part of the turtle farm, neither impeded or encroached on the traveled portion of the roadway that extended from Hwy. 75 nor interfered with Dupont's enjoyment of his property. Finding that certain improvements, including the turtle pond, encroached on the servitude and that Dupont had acquiesced in the construction of the turtle pond, the trial court denied Dupont's motion for a summary judgment, as well as a crossmotion for a summary judgment that had been filed by Hebert relative to Dupont's alleged encroachments.
After the original trial of this matter, the trial court found that 10 years had not elapsed since the 1996 granting of the 50-foot servitude to the Police Jury. Accordingly, the trial court concluded that it was impossible for the servitude to have been extinguished by nonuse under LSA-C.C. art. 753 as urged by Hebert. However, the trial court found that Dupont had agreed to the encroachments and had requested that Hebert build the levee around the rear of Dupont's property in connection with an alligator farm that never materialized. Nonetheless, the trial court concluded that because this agreement was not reduced to writing, there was no express written renunciation of the predial servitude by Dupont as required by LSA-C.C. art. 771. Accordingly, judgment was rendered, ordering both parties to remove the encroachments from the servitude.
In light of the trial court's failure to consider the issue of nonuse relative to the older 40-foot servitude, Hebert filed a motion for new trial, which was granted. After considering the evidence presented at the new trial, the trial court concluded that the assertion of Dupont's rights was barred by the doctrine of equitable estoppel. The trial court stated:
The property at issue is at the end of a rural street, beyond which it can be *805 described as the heartland of Southern Louisiana's swampland. There was no evidence presented suggesting the commercialization of the swamp on which the servitude extends only on paper. In reality, for this Court to [order] either party to remove their respective encroachments would be contra non valentum and an injustice to both parties. The encroachments impair neither party from access to their properties, nor to the swamplands beyond.
Accordingly, the court signed a judgment dismissing Dupont's petition and Hebert's reconventional demand with prejudice. Dupont appealed, contending that the trial court erred in allowing the doctrine of equitable estoppel to be raised by Hebert and in applying it in this case. Furthermore, Dupont asserts that the 40-foot servitude was not extinguished as a result of nonuse for ten years.

Discussion
A. Predial Servitude
A predial servitude is a charge on a servient estate for the benefit of a dominant estate. LSA-C.C. art. 646.[2] The two estates must belong to different owners. Id. There must be a benefit to the dominant estate.[3] LSA-C.C. art. 647. There is no predial servitude if the charge imposed cannot be reasonably expected to benefit the dominant estate. Id. The owner of the servient estate is not required to do anything. His obligation is to abstain from doing something on his estate or to permit something to be done on it. He may be required by convention or by law to keep his estate in suitable condition for the exercise of the servitude due to the dominant estate. LSA-C.C. art. 651.
Predial servitudes may be established by an owner on his estate or acquired for its benefit. The use and extent of such servitudes are regulated by the title by which they are created. LSA-C.C. art. 697. In the absence of such regulation, they are governed by the rules set forth in LSA-C.C. arts. 698 through 774. See LSA-C.C. art. 697. Predial servitudes are established on, or for the benefit of, distinct corporeal immovables. LSA-C.C. art. 698. A right of passage is an example of a predial servitude. See LSA-C.C. art. 699. The servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, or vehicles are permitted to pass through the servient estate. Unless the title provides otherwise, the extent of the right and mode of its exercise shall be suitable for the kind of traffic necessary for the reasonable use of the dominant estate. LSA-C.C. art. 705. A right-of-way is an affirmative servitude in that it gives the right to the owner of the dominant estate to do a certain thing on the servient estate. See LSA-C.C. art. 706.
The establishment of a predial servitude by title is an alienation of a part of the property to which the laws governing alienation of immovables apply. LSA-C.C. art. 708. Predial servitudes are established by all acts by which immovables may be transferred. LSA-C.C. art. 722. A predial servitude may be established on *806 a certain part of an estate, if that part is sufficiently described. LSA-C.C. art. 727. Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate. LSA-C.C. art. 730.
B. Prescription
A predial servitude, such as a servitude of passage, is preserved by the use made of it by anyone, even a stranger, so long as it is used as appertaining to the dominant estate. Palace Properties, L.L.C. v. Sizeler Hammond Square Limited Partnership, 01-2812 (La.App. 1st Cir.12/30/02), 839 So.2d 82, 94, writ denied, 03-0306 (La.4/4/03), 840 So.2d 1219; see LSA-C.C. art. 757. "So long as it is used as appertaining to the dominant estate" has been interpreted by this court as requiring that someone must use the property for the purpose of going onto that property for some legitimate purpose, either to see the owner or for something connected with the use of that property. Latour v. Francis, 417 So.2d 485, 489 (La.App. 1st Cir.), writ denied, 420 So.2d 983 (La.1982).
If a predial servitude is not used for ten years, it is extinguished. Church v. Bell, 00-0286 (La.App. 1st Cir.3/28/01), 790 So.2d 82, 84 n. 3, writ denied, 01-1214 (La.6/15/01), 793 So.2d 1247; see LSA-C.C. art. 753. Prescription of nonuse for an affirmative servitude is measured from the date of its last use. LSA-C.C. art. 754; Palace Properties, L.L.C., 839 So.2d at 94. When the prescription of nonuse is pled, the owner of the dominant estate has the burden of proving that someone has made use of the servitude in the manner contemplated by the grant of the servitude and as appertaining to the dominant estate during the period of time required for the accrual of prescription, such that no consecutive ten-year period of nonuse occurred. See LSA-C.C. art. 764; Palace Properties, L.L.C., 839 So.2d at 94. A partial use of a servitude constitutes use of the whole. LSA-C.C. art. 759. Therefore, the use of a part of the area burdened with a predial servitude interrupts the prescription of nonuse as to the entire area. A.N. Yiannopoulos, Predial Servitudes § 167 at 455, in 4 Louisiana Civil Law Treatise (3rd ed.2004).
Dupont has shown that a portion of the 40-foot servitude has been used. The fact that it is possible that no one used the unpaved portion of the 40-foot servitude to access the rear of the property since Hebert moved there in 1994 is inconsequential, as use of a portion of the servitude was sufficient to interrupt the prescription of nonuse.
C. Equitable Estoppel
The doctrine of equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied on such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded on good faith, the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence. American Bank and Trust Co. v. Trinity Universal Ins. Co., 251 La. 445, 205 So.2d 35, 40 (1967).
Real rights, such as a servitude, cannot be gained or lost by estoppel. United Gas Pipeline Co. v. Bellard, 286 So.2d 109, 112 (La.App. 3rd Cir.1973), citing Prentice v. Amax Petroleum Corp., 220 So.2d 783, 789 (La.App. 1st Cir.), writ denied, 254 La. 455, 223 So.2d 867 (1969). Therefore, estoppel cannot be invoked to defeat the real right asserted by Dupont in this action. Furthermore, since there is *807 positive law on the subject matter at issue in this case, equity cannot be invoked by the court. See United Gas Pipeline Co., 286 So.2d at 112; see also LSA-C.C. art. 4. Accordingly, the trial court erred as a matter of law when it applied the doctrine of equitable estoppel in this case.
Furthermore, estoppel is an affirmative defense[4] that must be pleaded specially in the answer[5] and proven by the defendant. See Hebert v. ANCO Insulation, Inc., 00-1929 (La.App. 1st Cir.7/31/02), 835 So.2d 483, 492, writs denied, 02-2956 and 02-2959 (La.2/21/03), 837 So.2d 629; United Gas Pipeline Co., 286 So.2d at 111: see also LSA-C.C.P. art. 1005. While the failure to plead an affirmative defense does not automatically preclude the application of the defense in all cases, the general rule is that pleadings may be enlarged by evidence adduced without objection when such evidence is not pertinent to any other issue raised by the pleadings and hence would have been excluded if objected to timely. Hebert, 835 So.2d at 492; see LSA-C.C.P. art. 1154. Since estoppel bars the normal assertion of rights, courts apply the doctrine cautiously. American Bank and Trust Co., 205 So.2d at 40. Therefore, the trial court also erred in considering Hebert's untimely assertion of the affirmative defense of estoppel in an argument raised after the rendition of the original judgment. See Hebert, 835 So.2d at 493.
D. Use and Extent of the Servitude
As previously indicated, the use and extent of a predial servitude are regulated by the title by which they are created and in the absence of such regulation, they are governed by the rules set forth in LSA-C.C. arts. 698 through 774. See LSA-C.C. art. 697. It is only where the title does not specify the extent of the right and the mode of its exercise that the extent of the servitude of passage is subject to interpretation based on what is suitable for the kind of traffic necessary for the reasonable use of the dominant estate. See LSA-C.C. art. 705.
Thus, when a predial servitude is created by contract, courts have found that the title by which the servitude was created regulated the use and extent of such a servitude. See Red River v. Noles, 406 So.2d 294, 297 (La.App. 3rd Cir.1981). Furthermore, only if the title was silent as to the extent and manner of use of the servitude have the courts resorted to an examination of the intent of the parties to determine the purpose of the servitude. See Id.; LSA-C.C. art. 749. When the title provides the exact dimensions of the area affected by the servitude, that contract must be given full effect. The owner of the servient estate may not, by unilateral action, effectively take over the unused areas of the servitude by establishing permanent structures thereon. Red River, 406 So.2d at 297.
The servitude in question in this case was created by title. There is no dispute that the title provided for a servitude of passage of 20 feet on the northern portion of Lot 19 and that a portion of *808 Hebert's turtle farm's constructions lie within that area. Since the terms of the title govern the use and extent of the servitude on Lot 19, Hebert cannot justify his encroachments by saying that his constructions do not prevent the use of the right-of-way by the dominant estate. Dupont obtained a 20-foot servitude of passage on Lot 19 in favor of Lot 20 from Hebert's ancestor-in-title to facilitate travel to the rear of Lot 20. Dupont's estate has been made to suffer a reduction of the servitude of passage afforded to Lot 20, in violation of the cited code articles. Therefore, we conclude that the trial court's apparent finding to the contrary was legally incorrect.
While it is true that Dupont did not oppose the construction of the turtle farm, there is no evidence that the predial servitude on Lot 19 in favor of Lot 20 was extinguished by an express and written renunciation by the owners of Lot 20. See LSA-C.C. art. 771.[6] We therefore conclude that there is no basis for permitting Hebert to construct a fence, a concrete slab, a wooden building, and a levee for his turtle pond within the 20-foot servitude of passage.[7] Accordingly, Dupont is entitled to have Hebert ordered to remove these encroachments. See Hymel v. St. John the Baptist Parish School Bd., 303 So.2d 588, 592 (La.App. 4th Cir.1974), writ denied, 307 So.2d 370 (La.1975); see also Red River, 406 So.2d at 297.

Decree
For the foregoing reasons, the judgment appealed from is reversed, and judgment is rendered in favor of Dupont, ordering Hebert to remove, at his own expense, the fence near the turtle farm, the levee to the turtle pond, the wooden building, and the concrete slab to the extent that each encroaches on the 20-foot servitude of passage in favor of Lot 20.[8] Costs of the trial and the appeal are assessed to Carl Hebert.
REVERSED AND RENDERED.
DOWNING, J., concurs and assigns reasons.
DOWNING J., concurs.
The majority opinion is a correct statement of the law, but I believe Solomon would have affirmed the trial judge.
NOTES
[1] Although the record is devoid of the instrument that purportedly created the 40-foot servitude in question, the parties do not dispute that in 1994 the northern portion of Lot 19 and the southern portion of Lot 20 were each burdened with 20 feet of a 40-foot servitude of passage in favor of the other. Thus, for purposes of this opinion we assume that the parties to any such instrument intended to create a servitude of passage over these contiguous portions of Lots 19 and 20, with each portion serving as a dominant estate and a servient estate to the other.
[2] The definition indicates that predial servitudes are real rights burdening immovables, that the creation of these rights requires the existence of two distinct immovables, belonging to different owners, and that these rights are for the benefit of an immovable rather than a person. LSA-C.C. art. 646, Revision Comments  1977, comment (b).
[3] The estate burdened with a predial servitude is designated as servient; the estate in whose favor the servitude is established is designated as dominant. LSA-C.C. art. 646, Revision Comments  1977, comment (d).
[4] An affirmative defense raises a new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating plaintiff's demand on its merits. Johnson v. Steele, 98-1726 (La.App. 1st Cir.9/24/99), 754 So.2d 1006, 1009.
[5] The material facts on which the estoppel is based must be pleaded with particularity. See LSA-C.C.P. arts. 854, 1003, 1005. The purpose of the requirement that certain defenses be affirmatively pled is to give the plaintiff fair and adequate notice of the nature of the defense, preventing last minute surprise. Johnson, 754 So.2d at 1009.
[6] A predial servitude is extinguished by an express and written renunciation by the owner of the dominant estate. LSA-C.C. art. 771. Tacit renunciation is no longer sufficient. LSA-C.C. art. 771, Revision Comments  1977, comment (a); cf. Louisiana Power & Light Co. v. Bennett, 107 So.2d 468, 470 (La. App. 1st Cir.1959).
[7] We note that Hebert's turtle pond was not within the servitude and Dupont was not seeking removal of the crawfish pond.
[8] Since Hebert failed to appeal or file an answer to Dupont's appeal with respect to the trial court's dismissal of his reconventional demand, we are powerless to order Dupont to do likewise. See LSA-C.C.P. art. 2133.