CRAIN, J.,
agreeing in part and dissenting in part.
hi agree the trial court correctly overruled the exception of no right of action for the reasons set forth in the per curiam opinion. Regarding the requests for injunc-tive relief, I believe the only issue raised is whether an all-purpose predial servitude of access or passage was created in favor of the properties on the island, as claimed by the TRI owners. I find the TRI owners proved the existence of that servitude. Thus, I agree with reversing the trial court’s judgment and dissolving the injunction that prohibited opening the gate. However, I believe the trial court erred in denying a mandatory injunction ordering the gate modified or removed to allow passage across the servitude. Therefore, I disagree with affirming the trial court’s denial of the mandatory injunction.
The TRI owners seek dissolution of the injunction prohibiting Grodner and those acting on her behalf from opening the welded easterly gate, a declaration that the TRI owners have a legal servitude of passage through the condominium development’s common area, and the issuance of a mandatory injunction ordering the removal of the gate. Resolution of these issues requires a determination of whether the welded gate obstructs a servitude of access or passage created for the benefit of the TRI owners through the condominium development’s common space.
Ascension Properties, Inc. developed the island in phases. The first phase involved the subdivision of lots on the western end of the island pursuant to a survey plat titled “Revised Final Plat of Three Rivers Island, First Filing, A Private ^Subdivision,” filed of record in Livingston Parish on December 12, 2003. The first filing plat referenced future filings for developing property east of the first filing development. In September 2006, four of the western-most lots in the first filing development were dedicated to a condominium development, Three Rivers Commons, with the declaration noting that the development was subject to such servitudes as shown in the records of Livingston Parish. The official map and declaration creating Three Rivers Commons specifically references the previously filed first filing plat. The property contiguous to, but east of, the first filing development was subdivided by filing the second sur *782 vey plat titled “Revised Pinal Plat of Three Rivers Island, Second Filing, A Private Subdivision.”
Both the first and second filing plats delineate a “50’ ALL PURPOSE UTILITY SERVITUDE,” with the given name “THREE RIVERS ISLAND DRIVE.” When one subdivides property by plat- of survey that designates a-right-of-way or servitude of passage and thereafter sells the subdivided tracts by reference to said survey, a servitude of passage is created thereby. Bernard v. Broussard, 538 So.2d 1093, 1094 (La. App. 3 Cir.), writ denied, 542 So.2d 1381 (La. 1989). The deeds of the two condominium development members offered into evidence contain language subjecting those properties to the fifty-foot servitude by referencing the first filing plat. The TRI owners’ deeds also contain language subjecting their properties to ’ the fifty-foot servitude either by referencing the first and second filing plats, or by attaching plats to the' deeds showing the fifty-foot servitude. Thus, these recorded plats and deeds establish the fifty-foot servitude affecting all properties on Three Rivers Island. See Bernard, 538 So.2d at 1094-95.
• The Board acknowledges that the referenced plats show a utility servitude, but counters that a predial servitude of passage in favor of the TRI owners is not created. The use and extent of a predial servitude is regulated by the title creating 13it, and absent such regulation, by the rules in Louisiana Civil Code articles 698 through 774, See La. Civ. Code art. 697; Dupont v. Hebert, 06-2334 (La.App. 1 Cir. 2/20/08), 984 So.2d 800, 807, unit denied, 08-0640 (La. 5/9/08), 980 So.2d 695. Generally, doubt as to the existence, extent, or manner of exercise of a predial servitude must be resolved in favor of the servient estate. See La. Civ. Code art. 730.
To prove the servitude, the TRI owners rely on dedication language included in the first and second filing plats and the property deeds which reference them. The following dedication language, appears under the heading “PRIVATE DEDICATION” on both survey plats:
THE AREA SHOWN AS ALL-PURPOSE SERVITUDE IS HEREBY DEDICATED IN PERPITUITY FOR ACCESS TO THE LOTS SHOWN HEREON, DRAINAGE, EMERGENCY VEHICLES AND UTILITY COMPANIES, AND IS DEDICATED FOR THE USE BY ANY PUBLIC OR PRIVATE ENTITY RELATING HEALTH AND SAFETY, NO TREES, SHRUBS, OR OTHER PLANTS MAYBE PLANTED, NOR SHALL ANY BUILDING, FENCE, STRUCTURE, OR IMPROVEMENTS BE CONSTRUCTED OR INSTALLED WITHIN-OR OVER THIS PRIVATE SERVITUDE SO AS TO PREVENT OR UNREASONABLY- INTERFERE WITH THE PURPOSE FOR WHICH THE SERVITUDE IS GRANTED. (Emphasis added.)
As a conventional servitude, the interpretation of the dedication language is guided by the rules for contractual interpretation. See La. Civ. Code arts. 654 and 697; Bonfanti v. City of Baton Rouge, 15-0549, 2015 WL 6951280 (La. App. 1 Cir. 11/9/15). The reasonable intention of the parties to a contract cannot be assumed, but must be sought by examining the words of the contract itself. Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC, 12-2055 (La. 3/19/13), 112 So.3d 187, 192. “When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” La. Civ. Code art. 2046. Common intent is determined in accordance with the general, ordinary, plain and popular *783 meaning of the words used in the contract. Clovelly, 112 So.3d at 192. When a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. Id.
Courts should refrain from construing a contract in a manner that leads to absurd consequences. La. Civ. Code art. 2046. Most importantly, a contract must be interpreted in a common-sense fashion, according the words of the contract their common and usual significance. Clovelly, 112 So.3d at 192; see also La. Civ. Code art. 2047. A contract provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. La. Civ, Code art. 2049. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. Civ. Code art. 2050.
A plain reading of the dedication language reveals two distinct dedications. The first sets forth specific uses separated by commas, which suggests a list of agreed uses for the servitude — “for access to the lots shown hereon, drainage, emergency vehicles and utility companies.” The comma after “hereon” distinguishes the use for “access” from the other uses for which the servitude is granted, namely, “drainage, emergency vehicles and utility companies.” This interpretation is supported by the fact that the word “access” creates a use that is of a completely different character than, for example, “drainage.” A servitude of “access” is not necessary to create a servitude of “drainage.” The uses are separate and distinct.
The second dedication is separated from the first by the phrase “and is dedicated” and is more general. It is “for the use by any public or private entity relating [to.] health and safety.” The dedication language clearly separates the two dedications, such that the use for health and safety does not modify the uses set |fiforth in the first dedication, meaning public or private entities can use the servitude for' health and safety related purposes, while the uses set forth in the first dedication “for access to the lots shown hereon, drainage, emergency vehicles and utility companies” are not limited to health and safety related purposes.
This construction is consistent with:the plain language of the dedication and avoids absurd results, like limiting the use of the servitude by “utility companies,” such as cable, satellite or telephone companies, to only health and safety related purposes. This interpretation also eliminates the need to reword the dedication to achieve the Board’s suggested interpretation, which is the dedication only grants access for drainage, access for emergency vehicles, and access for utility companies. The Board’s interpretation requires both ignoring the comma placed after the phrase “access to the lots shown hereon” and inserting “for” before the words “drainage,” “emergency vehicles,” and “utility companies.” I cannot, under the guise of interpretation, alter the dedication language to achieve the result advocated by the Board, when reading it as written, with the punctuation and words provided, results in an unambiguous and reasonable meaning.
The dedication language on the first and second filing plats, together with the subsequent sale of subdivided properties by reference to those plats, creates an all-purpose, predial servitude of access or passage in favor of the properties on the *784 island, including the lots owned by the TRI owners. The servitude allows the TRI owners to access their properties, including crossing the condominium development’s common space. The trial court erred in finding otherwise.
Generally, an injunction will issue only in its prohibitory form, but when a party obstructs another in the enjoyment of a real right, the latter may be entitled to a prohibitory injunction restraining the disturbance and also a mandatory | (injunction for the removal of the obstruction.[1] Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa, 04-0270 (La.App. 1 Cir. 3/24/05), 906 So.2d 660, 664. The parties do not dispute that the servitude area is blocked by a fence connected to the easterly gate, which is welded shut. The TRI owners have limited their request for injunctive relief specifically to the welded-shut gate, which the record establishes clearly and unreasonably interferes with a permitted use of the servitude — access to the properties on the island. Thus, the TRI owners are entitled to a mandatory injunction ordering the Board to remove or modify the gate to allow passage over the servitude. For these reasons, I agree with dissolving the permanent injunction and disagree with denying the mandatory injunction.

. A mandatory injunction is one that commands the doing of some action, and cannot be issued without a hearing on the merits. City of Baton Rouge/Parish of East Baton Rouge v. 200 Government Street, LLC, 08-0510 (La.App. 1 Cir. 9/23/08), 995 So.2d 32, 36, writ denied, 08-2554 (La. 1/9/09), 998 So.2d 726. Since the jurisprudence has established that a mandatory preliminary injunction has the same basic effect as a permanent injunction, the party seeking a mandatory injunction must show by a preponderance of the evidence at an evidentiary hearing that he is entitled to the injunction. Concerned Citizens for Proper Planning, LLC, 906 So.2d at 664.