417 So.2d 485 (1982)
Pershing J. LATOUR and Roceil A. Latour
v.
William FRANCIS.
No. 14997.
Court of Appeal of Louisiana, First Circuit.
June 29, 1982.
*486 Eric M. Ferrouillet, Elie, Ferrouillet & Ferrouillet, New Orleans, for defendant-appellant.
Sidney A. Marchand, III, Talbot, Sotile, Carmouche, Marchand & Marcello, Donaldsonville, for plaintiffs-appellees.
Before LOTTINGER, EDWARDS and SHORTESS, JJ.
SHORTESS, Judge.
Pershing J. Latour and Roceil A. Latour (plaintiffs-appellees) filed suit against William Francis (defendant-appellant) seeking a permanent injunction to prevent him from obstructing their use of a certain right-of-way, allegedly owned by them. Defendant filed an Exception of Liberative Prescription, claiming that the right-of-way or servitude had been extinguished by non-usage over a period of ten years. The trial judge granted the injunction and defendant has appealed.
The following facts are undisputed: By act dated October 29, 1957, Delta Mud and Chemical Company, Inc. (plaintiffs' predecessor in title) acquired from Harvey J. Truxillo and Henry J. Traphagen (defendant's predecessor in title) a certain tract of land described in the deed as located:
... in the Parish of Ascension, State of Louisiana, and in what is known as Smoke Bend, bounded on the North by the Right of Way of the Texas and pacific (sic) Railroad Company, on the East by other property of the vendors herein, on the West by land now or formerly belonging to Edward Irwin, and on the South by land now or formerly belonging to Clebert Oubre (now the property of Jack Hood and Orlan L. Bunn). For title see C.O.B. 57, folio 54, C.O.B. 47, folio 213, and C.O.B. 122, folio 529 et seq of Ascension Parish, Louisiana.
On that same date, Delta Mud also acquired from these vendors a servitude, namely, "a right of way being the right of ingress and egress" through the property retained by *487 Truxillo and Traphagen, situated to the East of the purchased tract. Delta Mud thereafter merged with Chromalloy American Corporation, which then sold the tract, including the right-of-way to plaintiffs, by act dated November 11, 1980.
Truxillo and Traphagen sold the parcel, directly east and adjacent to plaintiffs' tract, to Willie Francis, Jr., defendant's father, by act dated May 13, 1963. The deed provided:
This present conveyance is made and accepted subject to a certain right of way agreement between vendors and Delta Mud and Chemical Company, Inc., recorded in C.O.B. 129, folio 98 of Ascension Parish, Louisiana.
The tract was obtained by Florida Richard Francis, wife of Willie Francis, Jr., by community property settlement, dated March 9, 1976. Florida Francis transferred the property to her son, defendant herein, by act dated April 13, 1976.
The right-of-way was originally created to allow access from the public road on the opposite side of the railroad tracks, through defendant's property, and onto the tract now owned by plaintiffs. At present, access may be gained by leaving Louisiana Highway 1, crossing a ditch and railroad tracks, and then another ditch, by means of a ramp which leads to the right-of-way located on defendant's property; and plaintiffs' land is situated directly to the west.
The sole issue is whether there has ever been a ten-year period where the right-of-way has not been used by plaintiffs or by their predecessors in title.
This right-of-way is characterized by the Louisiana Civil Code as an affirmative predial servitude. Civil Code Art. 646 provides:
A predial servitude is a charge on a servient estate for the benefit of a dominant estate. The two estates must belong to different owners.
And Civil Code Art. 706 provides in pertinent part:
Predial servitudes are either affirmative or negative.
Affirmative servitudes are those that give the right to the owner of the dominant estate to do a certain thing on the servient estate. Such are the servitudes of right of way, drain, and support. [Emphasis ours.]
As a predial servitude, it is governed by a 10-year prescriptive period. Civil Code Art. 753. For affirmative servitudes, prescription begins to run from the date of the last use. Civil Code Art. 754.
The trial judge considered the extensive testimony on both sides and concluded that the right-of-way had not been extinguished by ten years non-use. We agree.
The record shows that there were several periodic visits made to plaintiffs' property, since its acquisition by Delta Mud in 1957. These occurrences involved the use of the right-of-way either to obtain entrance to the land or simply to observe any activity thereon.
Louis Talbot was the Vice-President of Delta Services in charge of sales in 1957, when Delta Mud first obtained the right-of-way. He testified that he made two or three visits during the negotiations for the sale of the land in 1956; that from 1957 to 1961, he made two visits personally and had operational men inspect the tract three or four times a year; that from 1961 to 1970, he and his family would occasionally check on the property for his company after football games, probably in 1964 or 1965; and that his last visit was with plaintiff in January or February of 1971, in contemplation of the sale. During each of these visits, Talbot stated that he utilized the right-of-way to gain entrance onto the property, or simply to observe same.
Louis Oliver, another employee of Delta Mud, testified that from 1970 to 1973, he was instructed by his company to go onto the land to cut the grass; that he transported a bush hog on an 18-wheeler which he used to cut the property; that he used the right-of-way during each visit to gain entrance; that approximately two visits per year were made; and that on each trip, it took about two days to cut the entire area.
*488 Ray Burleigh testified that while employed by Baroid Mud Company in June of 1971, he went with his wife and children to "check out" the tract for his boss; that at this time he simply used the right-of-way to go to the edge of the land and observe any activity; that he returned by himself in the Summer of 1974, this time on behalf of General Mud, to see if it would be an appropriate spot for business; that he actually walked on the land from the right-of-way; and that he contacted Talbot at this time concerning purchasing the land.
Plaintiff, President and co-owner of General Mud Company, testified that he first checked on the land in June of 1957; that every two or three years after that he would go and observe the land up until 1964; that in the Fall of 1970 he went to the tract with the specific purpose of purchasing it and on this visit spoke with Willie Francis; that he went back with Mr. Talbot in the Spring of 1971; that he was informed by letter dated March 29, 1971, that he could purchase the property from Delta Mud; that in 1972 he went to the property; that Delta Mud then sold out to Chromalloy American Corporation; that he visited the property in 1978 or 1979 and then with his attorney, thirty days before the purchase date, November 11, 1980.
Willie Francis, defendant's father, testified that he purchased the Francis tract in 1963; that the ramp which provided access to his property and to the right-of-way was in deplorable condition; that he and his son and workers built the ramp back up over several months; that they also built a barbed wire fence separating the two tracts, all in 1963; that he built a burial vault business and a residence on the land where he resided part-time; and that he never saw anyone use the right-of-way and go onto the Latour property, except for a few hunters, to whom he gave permission to use the right-of-way for access to the adjacent tract.
Defendant's testimony was consistent with his father's. He added that he had worked on the property since 1965; that he was physically present on it ninety percent of the time; that he has lived on it since 1969; that there was a hog pen present on the property from approximately 1968 to 1977; that he has had wire delivered in an 18-wheeler, but no other large vehicle entered the premises; and that he has never seen anyone use the servitude to enter the Latour property.
Eloise Francis, defendant's wife, stated that she is a housewife and is always at home; that the longest she has been away from her home is half a day; and that she has not seen the servitude used for access to the adjacent tract.
Daniel Walker stated that he built a hog pen on the property and raised hogs thereon from 1968 to about 1973; that he visited the property about one hour a day, seven days a week; and that he does not recall ever seeing anyone use the servitude.
Several other defense witnesses, mainly employees, relatives, and friends, testified that they had not seen any use of the right-of-way to get to the Latour property. Their testimony did establish that the fence built by Willie Francis in 1963 can hardly be seen at this time.
The trial judge stated in oral reasons:
... as I said, there are two things about the case which the Court can't reconcile and, as I said, to me the fact that many of the witnesses went back there, didn't see the hog farm, didn't see all these buildings. I can't reconcile thatand I don't impute any perjury or ill motives to anybodyany more than I can reconcile the testimony of the Francises who were there day in and day out, never took a vacation, every day but Sunday they were there and never saw anybody go on this property ... but I am convinced from the testimony that there was use made of this property and there never was a ten-year period in which there was no use made of it.
Great weight must be given to the credibility determinations of the trial judge, who has the opportunity to observe the conduct and demeanor of the witnesses. Murphy v. DeLatte, 389 So.2d 912 (La.App. *489 4th Cir. 1980); writ denied, 396 So.2d 899 (La.1981). His findings will not be set aside, unless the appellate court is convinced from its review that they are clearly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Our review of the record shows ample evidence to support the trial judge's conclusion that the right-of-way was not extinguished by ten years non-usage.
Defendant argues that certain visits made by plaintiff, when he was a competitor of Delta Mud, and an employee and co-owner of General Mud Company, were not sufficient "uses" of the right-of-way for purposes of interrupting prescription.
A predial servitude is a charge established on an estate expressly for the benefit of another estate, as opposed to being granted for the convenience of the person. Civil Code Arts. 533, 534, 646, 731 and 734. Civil Code Art. 757 states:
A predial servitude is preserved by the use made of it by anyone, even a stranger, if it is used an appertaining to the dominant estate.
The trial judge found, with respect to the right-of-way question:
And what that last phrase, "if it be used as appertaining to the dominant estate," means in the opinion of the Court is that it must be used for some purpose connected with the ingress and egress to the dominant estate, ... that someone must use the property for the purpose of going onto that property for some legitimate purpose, either to see the owner or for something connected with the use of that property....
The Official Reporter's Comments to Civil Code Art. 757 detail Articles 793 and 794 of the Civil Code of 1870, which formed the basis for the present rule:

Comments
(a) This provision reproduces the substance of Articles 793 and 794 of the Louisiana Civil Code of 1870. It does not change the law.
(b) Thus, the servitude is preserved by the use made of it by one who possesses the dominant estate in bad faith. But if any one passes over the land of another considering the way as public, or as belonging to another estate, the owner of the dominant estate may not avail himself of the use thus made of the servitude in order to prevent the running of the prescription. C.C. art. 794(1), (2) (1870).
(c) In order to preserve a predial servitude and prevent prescription from running against it, it is not necessary that the servitude be exercised personally by the owner of the dominant estate or by a person who uses his rights or who represents him directly, as a usufructuary, a lessee, or a mandatory. It suffices that the servitude be exercised by employees of the owner, his friends, or visitors. C.C. art. 793 (1870).
The explicit language of Civil Code Art. 757, along with its comments, supports the trial judge's conclusion. The use of the right-of-way by plaintiff, who was described by Louis Talbot as his "friendly competitor" and by the trial judge as a "prospective buyer," was within the scope of activities sufficient to interrupt prescription under Civil Code Art. 757.
For the above reasons, the judgment of the trial court is affirmed and all costs of this appeal are assessed to defendant-appellant.
AFFIRMED.