CRAIN, J.
Ijn this suit to declare a predial servitude of passage extinguished by prescription of nonuse, the plaintiff appeals from a *640 summary judgment granted in favor of the defendant dismissing the claims with prejudice. We affirm.
FACTS AND PROCEDURAL HISTORY
The servitude at issue burdens property owned by R.G. Claitor’s Realty in the northeast quadrant of the intersection of Perkins Road and South Acadian Thruway in Baton Rouge. The dominant estate is owned by the defendant, Laurance W. Brooks, Jr., and is located at the corner of the intersection, fronting on both roadways to the south and west and surrounded on the east and north by the Claitor property. The Brooks parcel was carved out of the larger tract in 1968, when the original owners, Mr. and Mrs. Robert G. Claitor, Sr., agreed to sell it to Brooks. The transfer was accomplished through an act of exchange with another party on October 16, 1968, who then conveyed ownership of the parcel to Brooks on October 28, 1968.[1]
In the act of exchange, the Claitors provided that they “do hereby establish and create in favor of the [Brooks parcel] a servitude of passage for, and use by, vehicles of all descriptions, animals' and pedestrians, over and across the following described property....” The boundaries of the servitude are described in detail by a metes and bounds description and an attached plat, which is reproduced below and depicts the servitude in the shaded area.
*641 [[Image here]]
As illustrated, the servitude is somewhat T-shaped and extends north from Perkins Road approximately 242 feet at a width of 25 feet, and then west to South Acadian Thruway at a width of 30 feet, together with a short length to the east. The Brooks parcel is identified as “TRACT ‘A’l,” and all other property to the north (above) and east (right) shown on the plat is owned by Claitor’s Realty and is used as access and parking for businesses on other parts of the property not shown on the plat. The servitude is further described as “permanent ... in the nature of a cove *642 nant running with the land, [and] is for the benefit of said Tract ‘A-l’.... ”
According to his affidavit, Mr. Claitor granted the servitude with the' [/‘understanding and intent” that it would be used as a drive-through lane for a proposed fast-food restaurant on the Brooks parcel However, Brooks leased the parcel in 1969 to ExxonMobile Corporation, who built and opened a gasoline service station at the location in 1970. During the construction, Exxon used fill dirt to raise the level of the parcel several feet above the servitude and other adjacent property. A set of steps was constructed on the east side of the parcel leading to the servitude to enable pedestrians to walk to and from the service station across the servitude. The servitude was not necessary for vehicular traffic to access the service station because the parcel contained two driveways directly connecting to Perkins Road and Acadian Thruway. The service station was demolished in 2001, and the property remained vacant through at least 2010.
In 2011, Mr. Claitor filed suit against Brooks and alleged that the servitude was extinguished by prescription of nonuse for ten years pursuant to Louisiana Civil Code article 753.[2] Brooks filed a motion for summary judgment asserting that the servitude was valid and enforceable and that the petition should be dismissed with prejudice. The motion was supported by affidavits and other evidence that indicated repeated use of the servitude by pedestrians to access the Brooks parcel, including Brooks’ sworn statement that he personally used the servitude to access the parcel on a weekly basis or, at the very least, several times a year since he acquired the property in 1968. Brooks also attested that a surveyor, realtor, two appraisers, and a representative of a potential tenant used the servitude in his presence to access the property. An attorney, Daniel D. Holliday, III, attested that on multiple occasions in 2002, 2008, and 2004, he used the servitude to access the property in connection with his representation of Brooks in litigation against Exxon; and a groundskeeper confirmed by affidavit that he parked his truck on the servitude to unload and operate equipment that he used to maintain the [^Brooks property on at least two occasions in 2010. Finally, a manager of the service station from 1992 through 1997 attested that he observed patrons and employees of the station often use the concrete steps leading down to the servitude to access Perkins Road and other businesses located nearby.
Claitor’s Realty opposed the motion with Mr. Claitor’s affidavit wherein he stated that he agreed to grant the servitude for the purpose of the drive-through lane. According to Mr. Claitor, it was his “understanding and intent that the [servitude was going to be used as a drive-through lane at a proposed McDonald’s restaurant.” However, after Brooks acquired the property, a gasoline service station was constructed on it, and the elevation of the tract and placement of concrete retaining walls during that construction made it physically impossible for any vehicle to travel from the servitude onto the Brooks parcel. To his personal knowledge, no vehicle had ever done so. He further confirmed that the pedestrian and vehicular access to the tract is provided by driveways on the Brooks parcel leading to Perkins Road and Acadian Thruway and that the servitude was never needed for pedestrians to access the service station. The *643 servitude is not marked by any signs, and Brooks never sought permission, nor was any granted, for Brooks or his tenants or invitees to use the parking lot on the Claitor property.
Claitor’s Realty also introduced excerpts of Brooks’ deposition wherein he acknowledged that there was never an entryway for vehicular traffic from the servitude onto the Brooks parcel. Brooks also knew of only one instance of a vehicle accessing the property from the servitude, which occurred in 2010 when he drove his vehicle onto the property. A video of that event showed Brooks’ vehicle attempting to climb a side hill of the parcel but apparently unable to crest the hill. Both parties also offered numerous photographs depicting the property over the course of several years.
IfiThe trial court granted the summary judgment in favor of Brooks and adopted his supporting memorandum as reasons. A judgment was entered dismissing the claims with prejudice, and Claitor’s Realty appealed assigning as error the- trial court’s finding that there were no material issues of fact that prevented the granting of the motion for summary judgment.
LAW AND ANALYSIS
A predial servitude is a charge on a servient estate for the benefit of a dominant estate. La. Civ.Code art. 646.[3] The use and extent of such servitudes are regulated by the title by which they are created, and, in the absence of such regulation, they are governed by the rules set forth in Louisiana Civil Code articles 698 through 774. La. Civ.Code art. 697. A servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, utilities, or vehicles are permitted to pass through the servient estate. La. Civ. Code art. 705.
A predial servitude is extinguished by nonuse for ten years. La. Civ.Code art. 753. When the prescription of nonuse is pled, the owner of the dominant estate has the burden of proving that he or some other person has made use of the servitude as appertaining to his estate during the period of time required for the accrual of the prescription, such that no continuous ten-year period of non-use occurred. La. Civ.Code art. 764; Palace Properties, L.L.C., 839 So.2d at 94. A predial servitude, such as a servitude of passage, is preserved by the use made of it by anyone, even a stranger, if it is used as appertaining to the dominant estate. La. Civ.Code art. 757. The phrase “appertaining to the dominant estate” has been | interpreted by this court as requiring that someone must use the servitude for the purpose of going onto the dominant estate for some legitimate purpose, either to see the owner or for something connected with the use of that property. See Dupont v. Hebert, 06-2334 (LaApp. 1 Cir. 2/20/08), 984 So.2d 800, 806, writ denied, 08-0640 (La.5/9/08), 980 So.2d 695; Palace Properties, L.L.C., 839 So.2d at 94; Latour v. Francis, 417 So.2d 485, 489 (La.App. 1 Cir.), writ denied, 420 So.2d 983 (La.1982). A partial use of a servitude constitutes use of the whole. La. Civ. Code art. 759. Therefore, the use of a part of the area burdened with a predial servitude interrupts the prescrip *644 tion of nonuse as to the entire area. Du-pont, 984 So.2d at 806.
A. Intent and Manner of Use of Servitude
Claitor’s Realty first asserts that a summary judgment was inappropriate because Mr. Claitor’s intent in granting the servitude is a material fact at issue in the case.[4] Claitor’s Realty contends that Mr. Claitor’s purpose for granting the servitude is relevant for determining what uses are sufficient to interrupt the prescription of nonuse, and Mr. Claitor’s affidavit establishes that he granted the servitude with the understanding that it would be used as a drive-through lane for a fast-food restaurant. Therefore, according to Claitor’s Realty, there “is a clear dispute between the parties as to whether the alleged passing of pedestrians over the [s]ervitude constitutes ‘use’ of the servitude.” However, as explained hereinafter, the Civil Code articles governing predial servitudes permit evidence of the servitude’s purpose to determine its uses only if the servitude agreement does not identify the uses.
| ¿Predial servitudes of passage are addressed in Article 705, which provides in pertinent part, “Unless the title provides otherwise, the extent of the right and the mode of its exercise shall be suitable for the kind of traffic or utility necessary for the reasonable use of the dominant estate.” La. Civ.Code art. 705. According to Article 749, “If the title is silent as to the extent and manner of use of the servitude, the intention of the parties is to be determined in light of its purpose.”[5] A court should resort to an examination of the intent of the parties to determine the purpose of the servitude only if the title is silent as to the extent and manner of use of the servitude. Dupont, 984 So.2d at 807. Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate. La. Civ.Code art. 730.
Relying on Article 749, Claitor’s Realty argues that the servitude agreement is “silent” as to the “manner of use” of the servitude, so the intention of the parties must be determined “in light of its purpose.” Claitor’s Realty claims that only the extent of the servitude (its dimensions) and “mode of its use” were set forth in the agreement, but “other specifics of how the [servitude was to be used, its limitations, and its purpose, were not stated.”
Although summary judgment is generally not appropriate to establish the intent of contracting parties, where the words of a contract are clear, explicit and lead to no absurd consequences, the meaning and intent of the parties must be sought within the four corners of the in- *645 strument and cannot be explained or contradicted by parol evidence. Hayden v. Phillips, 94-0130 (La.App. 1 Cir. _J_gl1/10/94), 646 So.2d 1014, 1016, unit denied, 95-0244 (La.3/24/95), 651 So.2d 291; see also La. Civ.Code art. 1848. Under those circumstances, the interpretation of the contract is a matter of law and summary judgment is appropriate. Sims v. Mulhearn Funeral Home, Inc., 07-0054 (La.5/22/07), 956 So.2d 588, 590.
Claitors Realty’s assertion that the agreement’s language authorizing use of the servitude by vehicles, animals, and pedestrians only identifies the servitude’s “modes of use” and not its “manner of use” assumes a meaningful difference between those terms. We disagree. The terms “mode” and “manner” are not widely used in this context in the Civil Code articles governing predial servitudes. The word “mode” appears once in Article 705, which is applicable to servitudes of passage and addresses the “extent of the right and the mode of its exercise.” The word “manner” appears twice, first in Article 730, which provides that doubt as to the existence, extent or “manner of exercise” of a predial servitude is resolved in favor of the ser-vient estate; and a second time in Article 749, which permits evidence of intent of the parties if the title is silent as to the extent and “manner of use” of the servitude. Although the current Civil Code does not define “mode” and “manner” as used in these articles, the terms can be traced to the Louisiana Civil Code of 1870, which used them interchangeably to refer to uses of a servitude. Former Article 796 provided, in part, “By mode of servitude, in this case, is understood the manner of using the servitude as is prescribed in this title.” Thus, “mode” was defined as the “manner” of using the servitude. See also Black’s Law Dictionary (9th ed.2009) (defining “mode” as a “manner of doing something”).
The present Civil Code makes numerous references to the “use” of a servitude without expressing any significance or distinction as to the “manner” or “mode” of use. See La. Civ.Code arts. 697 (the “use” and extent of predial servitudes are regulated by title and relevant Civil Code articles), 728 (the “use” of |10a predial servitude may be limited to certain times), 743 (rights necessary for the “use” of the servitude are acquired at the time the servitude is established). These articles, construed in pari materia with Articles 705, 730 and 749, do not indicate that uses of a servitude should be divided into separate legal classifications of “modes of use” and “manners of use.” The phrases are synonymous and describe the uses that are expressly provided for in the servitude agreement, or in the absence of any such provisions, by the relevant Civil Code articles governing the use of servitudes. See La. Civ.Code arts. 13, 697, 705, 749.
Therefore, the resolution of this assignment of error does not turn on a purported distinction between a mode of use and a manner of use. Instead, this assignment of error requires a determination of whether the servitude agreement is “silent” as to its extent and use under Article 749, or whether the agreement “provides otherwise” by identifying the extent and uses pursuant to Article 705. If the agreement is silent, then, and only then, does Mr. Claitor’s intent concerning the purpose of the servitude become a material fact that is necessary to determine the permitted uses of the servitude.
The servitude agreement created a “servitude of passage for, and use by, vehicles of all descriptions, animals and pedestrians, over and across” the Claitor parcel (emphasis added). Claitor’s Realty does not dispute that this language established *646 a servitude of passage and that the agreement contains no limitations on the use of the servitude of passage. Any attempt to limit the right of passage only to vehicular traffic to reflect the “purpose” of the servitude under Article 749 cannot be reconciled with the express terms of the servitude agreement which extends the right to “pedestrians.” The express terms of the • servitude agreement control the use the servitude. See La. Civ.Code arts. 697 and 705. Adopting the position advanced by Claitor’s Realty would require this court to disregard the word “pedestrian” used to identify one of the permissible uses of the servitude. |irWhen a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit. Clovelly Oil Co., LLC v. Midstates Petroleum, Co., LLC, 12-2055 (La.3/19/13), 112 So.3d 187, 192.
Based upon the language of the servitude agreement creating a servitude of passage for use by vehicles, animals, and pedestrians, we find that the servitude agreement “provides otherwise” and therefore is not “silent” as to use of the servitude by pedestrians. See La. Civ.Code arts. 705, 749; Harris v. Darinn Corp., 431 So.2d 441, 442-43 nn. 4-5 (La.App. 1 Cir.1983), unit denied, 435 So.2d 429 (La. 1983) (servitude agreement providing that servitude was for “vehicular traffic and/or pedestrians” was not silent as to its manner of use).
Our holding is also in accord with this court’s decision in Cate Properties, LLC v. Hepburn, 11-0515 (La.App. 1 Cir. 11/9/11), 2011 WL 5407898 (unpublished), wherein the plaintiff asserted that a general servitude of passage had prescribed because it had not been used for the specific purpose intended by the grantors. The servitude agreement described the extent of the servitude and then generally described the right as a “predial right-of-way or servitude of passage” without further mention or description of its uses. Cate Properties, LLC, at *2. The servient estate owners argued that the servitude was established for the purpose of removing timber from the dominant estate and was extinguished by the prescription of nonuse because a ten-year period elapsed without a legally sufficient use of the servitude. In affirming a summary judgment in favor of the dominant estate owners, this court found:
By the clear language of the agreement, the servitude is one of passage. Unless the title provides otherwise, the extent of the right and the mode of. its exercise shall be suitable for the kind of traffic necessary for the reasonable use of the dominant estate. La. Civ.Code Ann. art. 705. The title does not provide that the servitude is restricted or limited in any way. In particular, the title does not indicate that the servitude’s purpose is for use in removing timber from the Cate property during periodic logging operations, as suggested by the Hep-burns. Rather, the title establishes a general | fright of passage over [the ser-vient estate] in favor of the Cate property-
Cate Properties, LLC, at *2. Based upon evidence that individuals had used the servitude for access to the dominant estate, this court found that the servitude had been sufficiently used to prevent its extin-guishment by the prescription of nonuse. Cate Properties, LLC, at *3.
The language of the servitude agreement in this case provides an even more complete description of the servitude’s intended use than the agreement in Cate Properties, LLC because it not only defines the physical extent of the servitude, but it also provides that the right to use the servitude is extended to “vehicles of all descriptions, animals and pedestrians.”
*647 The servitude agreement authorizes both vehicular and pedestrian use and places no limitations on those uses.
Claitor’s Realty primarily relies upon Palgrave v. Gros, 02-249 (La.App. 5 Cir. 9/30/02), 829 So.2d 579 (“Palgrave II”), in support of its argument that the court must go beyond the terms of the agreement to identify the purpose of the servitude to determine whether it has been used in a manner that will interrupt the prescription of nonuse. However, Palgrave II and its predecessor opinion, Palgrave v. Tallieu, 508 So.2d 97, 98 (La.App. 5 Cir.1987) (“Palgrave I”), are factually distinguishable because the original servitude agreement in that litigation failed to identify the extent (physical dimensions) of the servitude. The agreement under review in Palgmve I granted the Palgraves the “right to use Lot 1 Square 2 as a means of ingress and egress to Bayou Barataría.” Palgmve I, 508 So.2d at 98. Lot 1 bordered on Bayou Barataría, and the Palgraves needed access to the bayou for boat launching in connection with a contemplated shrimping and crabbing business. Palgmve I, 508 So.2d at 98. Notably, the agreement made no attempt to identify the extent of the servitude created on Lot 1. The initial litigation arose after the owner of Lot 1 sold the property to a third party who then | , .¡attempted to prevent the Palgraves from using it. At issue was whether the servitude was personal (and not enforceable against the new owner of Lot 1) or predial (enforceable against the new owner), and the trial court held that the right was a predial servitude. Palgrave I, 508 So.2d at 99.
The court of appeal affirmed and observed that “the appealed-from judgment does not specify the extent of the servitude granted.... ” Palgmve I, 508 So.2d at 100 (emphasis added). Given the absence of a description of the size of the servitude, the court considered the intention of the parties inferred from the purpose of the servitude to conclude that the Palgraves were “entitled to a servitude sufficient to allow them to bring their boats in and out of Bayou Barataría ... with the least possible inconvenience and disruption” to the owners of the servient estate. Palgmve I, 508 So.2d at 100. The parties then entered a consent judgment that specifically described the servitude’s boundaries and provided that “additional space may be required near the road to back a trailered boat into” the servient estate. See Pal-gmve II, 829 So.2d at 581.
Because the servitude agreement was silent as to the extent of the servitude, the court in Palgmve I determined the purpose of the servitude in order to define its extent so that it would be the least burdensome for the servient estate. The admission of evidence of the purpose of the servitude under those circumstances is authorized by Article 749. Claitor’s Realty does not dispute that the subject servitude agreement contains a detailed description of the extent of the servitude through a legal description and an attached plat. Therefore, Palgmve I provides no support for the position that evidence of the purpose of the servitude in this case is admissible.
The prescription of nonuse was addressed in the subsequent litigation in Pal-gmve II. After the passage of ten years, the owner of the servient estate filed a suit alleging that the servitude had prescribed due to nonuse. The court reviewed 114the prior judgments that modified the terms of the servitude agreement and recognized that the resulting agreement “granted the Palgraves the right of ingress and egress to the bayou and the right to bring their boats in and out of Bayou Barataría.” Palgmve II, 829 So.2d at 582-583. Therefore, the “purpose of the servitude was to *648 allow the Palgraves ingress and egress through the property to bring their boats to Bayou Barataría.” Palgrave II, 829 So.2d at 584. Although individuals had walked across the servitude, the court held that such uses were not sufficient to interrupt prescription without some attempt to bring a boat across the servitude to access the bayou. Palgrave II, 829 So.2d at 584.
The holding in Palgrave II was dictated by the terms of the servitude granted by the court in Palgrave I (a servitude “sufficient to allow [the Palgraves] to bring their boats in and out of Bayou Barata-ría”), and the ensuing consent judgment wherein the parties agreed that the servitude included “additional space [as] may be required near the road to back a trail-ered boat into” the servient estate. See Palgrave I, 508 So.2d at 100; Palgrave II, 829 So.2d at 581. These express terms identified that the purpose of the servitude was to permit the Palgraves to launch their boats in the bayou. Consequently, any other uses were not sufficient to interrupt the prescription of nonuse.
In contrast, the servitude agreement in this case does not suggest in any way that it was granted only for vehicular traffic for a fast-food restaurant drive-through lane. Rather, the agreement expressly provides that the servitude is one of passage granted for use by “vehicles of all descriptions, animals and pedestrians.” Neither Pal-grave I nor Palgrave II support the use of evidence of the servitude’s purpose to eliminate a permitted use of a servitude when that use is clearly set forth in the servitude agreement. See La. Civ.Code arts. 697, 705, 749; Cate Properties, LLC, 2011 WL 5407898 at *2.
11fiIn a final argument that the agreement is “silent” as to the intended uses of the servitude, Claitor’s Realty claims that the provision merely tracks the language used to define the servitude of passage in former Article 722, which was in effect at the time the servitude was created.[6] While we note distinctions between the language of prior Article 722 and the subject servitude agreement, any similarity between the two does not negate the fact that the subject agreement identified both the extent of the servitude and its intended use as a servitude of passage by “vehicles of all descriptions, animals and pedestrians.” If a more restrictive use was intended, the parties were obligated to express those restrictions in the agreement. See La. Civ.Code arts. 697 and 705.
The subject servitude agreement establishes a servitude of passage that maybe used by vehicles, animals, and pedestrians. The title is not silent as to the extent or the use of the servitude, so the court is not required to resort to the purpose of the servitude to identify the intended uses. Therefore, Mr. Claitor’s intent in granting the servitude is not a material fact that precludes the granting of summary judgment. This argument by Claitor’s Realty has no merit.
B. Intent of Users of Servitude
Claitor’s Realty also asserts that the intent of the users of the servitude is a factual issue and cites comment (b) of Louisiana Civil Code article 757, which states that if one “passes over the land of another considering the way as public, or as belonging to another estate, the owner of the dominant estate may not avail himself of the use thus made of the servitude in *649 order to prevent the running of prescription.” La. Civ.Code art. 757, Official Revision Comments (b). Claitor’s Realty contends that the court must determine “the intent of any third party that |1Rwalked across the [servitude, and why they did it and what they thought at the time.”
The cited comment to Article 757 is based upon former Louisiana Civil Code article 794, repealed in 1977 and replaced by Article 757, which now provides that a predial servitude is “preserved by the use made of it by anyone, even a stranger, if it is used as appertaining to the dominant estate.” As previously noted, the phrase “appertaining to the dominant estate” has been consistently interpreted by this court to mean that someone must use the servitude for the purpose of going onto the dominant estate for some legitimate purpose, either to see the owner or for something connected with the use of that property. See Dupont, 984 So.2d at 806; Palace Properties, L.L.C., 839 So.2d at 94; Latour, 417 So.2d at 489. The evidence presented by Brooks established that a number of individuals, including Brooks, have used the servitude on multiple occasions to access the Brooks parcel for legitimate purposes connected with the use of that property, including inspecting, surveying, appraising, maintaining, and marketing the property. Third parties also used the servitude to pass to and from the Brooks parcel. Claitor’s Realty presented no evidence to contradict these uses. All of these uses are sufficiently “appertaining to the dominant estate” to satisfy the requirements of Article 757 without any further determination of the intent of the users. See Cate Properties, LLC, 2011 WL 5407898 at *3 (servitude was sufficiently used to prevent its extin-guishment by prescription of nonuse where individuals used the servitude for access to the dominant estate); Palace Properties, L.L.C., 839 So.2d at 95-96 (real estate broker and developer’s use of servitude of passage to access dominant estate for purposes of inspecting, listing, and marketing the property, all of which were directly connected to the property, appertained to the dominant estate and interrupted prescription). This argument also lacks merit,
IijC. Brooks’ Credibility
Claitor’s Realty also challenges Brooks’ credibility and argues that a summary judgment should not have been granted based upon the “self-serving” statements in his affidavit, citing for support Hines v. Garrett, 04-0806 (La.6/25/04), 876 So.2d 764. However, in Hines the supreme court was confronted with an “unusual situation” v/herein a defendant moving for summary judgment presented his “own self-serving testimony to overcome a presumption of negligence ... but that testimony also contained] significant discrepancies which would logically be considered by a fact-finder in determining his credibility and in weighing the evidence.” Hines, 876 So.2d at 768. Under those circumstances, the court held that the general rule that a court must accept an affiant’s testimony or affidavit as credible on a motion for summary judgment is not appropriate. Hines, 876 So.2d at 768-69.
Claitor’s Realty has not identified any significant discrepancies in Brooks’ affidavit or deposition testimony. Brooks did state in his deposition and affidavit that he once used the servitude to access his parcel by vehicle, specifying in his affidavit that the area accessed was the “northeast corner” of the property. A video of that event revealed a very limited accessing of that portion of the property when Brooks drove his vehicle onto a side hill that apparently could not be crested. Nevertheless, the vehicle did, to that limited degree, *650 “access” the northeast corner of the property. Regardless of whether the video offers any proof of a use of the servitude sufficient to interrupt prescription, it does not reveal a “significant discrepancy” in Brooks’ testimony.
We further note that Brooks offered other uncontradicted evidence of the úse of the servitude that was set forth in affidavits from a manager of the service station, a groundskeeper, and Brooks’ attorney from prior litigation involving the | isparcel. The trial court did not err in basing the summary judgment on Brooks’ affidavit and the other evidence submitted in support thereof.
D. Prescription of Particular Mode of Use
In a final alternative argument, Claitor’s Realty asserts that the particular use of the servitude for vehicular traffic has prescribed and relies upon former Louisiana Civil Code article 796, which provided that a mode of using a servitude could prescribe by nonuse, and former Article 798, which stated that if an owner “enjoyed a right less extensive than is given him by his title, the servitude ... is reduced to that which is preserved by possession during the time necessary to establish prescription.” Both of those articles were repealed effective January 1, 1978 by Acts 1977, No. 514. See Continental Group., Inc. v. Allison, 404 So.2d 428, 436 n. 2 (La.1981) (on rehearing), cert. denied, 456 U.S. 906, 102 S.Ct. 1753, 72 L.Ed.2d 163 (1982). The substance of former Article 796 was not reproduced in any current article following the 1977 revision; and the partial use of a servitude, addressed in former Article 798, is now governed by Article 759, which contradicts the former article by providing that a “partial use of the servitude constitutes use of the whole.”[7]
The servitude in the present case was established on October 16, 1968, so the minimum ten-year period of nonuse ended on October 16, 1978, approximately ten months after the repeal of Articles 796 and 798. Given that the articles were not in effect on October 16, 1978, they have no application to the loss of any rights by the prescription of nonuse accruing on or after that date. For these same reasons, the reliance by Claitor’s Realty on the holding in Continental Group., Inc. |19is misplaced because the court therein was applying the law “in effect when the servitude was made in 1956, and when the right to strip-mine for lignite under said servitude prescribed in 1966,” which was well before the repeal of Articles 796 and 798. See Continental Group, Inc., 404 So.2d at 436 (emphasis added).
Claitor’s Realty cites the official revision comments for Article 759 as support for its claim that a particular “mode” of use can terminate, independently of other uses, by ten years of nonuse even after the 1977 repeal of former Article 798. The cited comments contain no support for that assertion. The comments begin with the statement that the article “is new” and “changes the law but accords in part with Louisiana jurisprudence.” La. Civ.Code art. 759, Comment (a). The ensuing comments explain the history of former Article 798 and its interpretation in the jurisprudence. The explanation contains no suggestion that a particular mode of use is *651 subject to prescription after the repeal of former Article 798. Absent a contrary provision in the title creating the servitude, the concept of prescription of a mode of use ended in Louisiana with the repeal of Articles 796 and 798 effective January 1, 1978.
This conclusion is further supported by the language of current Article 759, which mandates that a partial use of a servitude constitutes use of the whole servitude. As explained by Professor A.N. Yiannopoulos:
According to Article 759 of the Louisiana Civil Code, a partial use of a servitude “constitutes use of the whole.” This provision is an application of the principle of indivisibility of predial servi-tudes and the maxim servitus per par-tem retinetur [servitude by part retained]. Therefore, the use of a part of the area burdened with a predial servitude interrupts the prescription of non-use as to the entire area, and the use of the servitude in any manner interrupts the prescription of nonuse as to all manners of use.
4 La. Civ. L. Treatise, Predial Servitudes § 8.8 (4th ed.) (footnotes omitted and emphasis added). In recognition that this was a change in the law produced by the 1977 revision, Professor Yiannopoulos continued the above explanation by noting, |j.n“[The law] was otherwise under the regime of the Louisiana Civil Code of 1870,” referencing repealed Articles 796 and 798. The argument that the vehicular use of the servitude prescribed by nonuse has no merit.[8]
CONCLUSION
For these reasons, we affirm the October 8, 2012 judgment of trial court granting summary judgment in favor of Brooks and dismissing the claims of Claitor’s Realty with prejudice. Costs of this appeal are assessed to Claitor’s Realty.
AFFIRMED.

. The Claitor property was eventually transferred to Claitor’s Realty, and Mr. Claitor is the general partner of that entity,

. Claitor’s Realty, the current owner of the Claitor property, was substituted as the plaintiff through an amended petition.

. The section of the Louisiana Civil Code dealing with predial servitudes was revised, effective January 1, 1978. See 1977 La. Acts, No. 514, § 1. Citations in this opinion are to the code articles after the revision. Unless otherwise indicated, the changes in the law do not affect the issues in this case. See Palace Properties, L.L.C. v. Sizeler Hammond Square Ltd. Partnership, 01-2812 (La.App. 1 Cir. 12/30/02), 839 So.2d 82, 94 n. 16, writ denied, 03-0306 (La.4/4/03), 840 So.2d 1219.

. A fact is material when its existence or nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recovery, meaning that the fact potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 751.

. Article 749 is based on former Article 780, which provided that if the title "does not designate [the servitude’s] breadth, nor the manner in which it is to be used,” the court could consider evidence of prior use of the servitude area, or in the absence thereof, the intention of the parties, and the purpose for which the servitude was granted. Therefore, both Article 749 and former Article 780 require that the title be silent as to the extent (breadth) and manner of use of the servitude to permit evidence of the intention of the parties. See Hospital Service District No. 2 of Parish of Lafourche v. Community Bank of Lafourche, 00-1035 (La.App. 1 Cir. 6/22/01), 790 So.2d 688, 693-94, Wright v. Department of Highways, 342 So.2d 230, 232 (La.App. 1 Cir. 1976), writ denied, 343 So.2d 1075 (La. 1977).

. Article 722 of the 1870 Louisiana Civil Code provided, in pertinent part, "The right of passage, or of way, is a servitude imposed by law or by convention, and by virtue of which one has a right to pass on foot, on horseback, or in a vehicle, to drive beasts of burden or carts through the estate of another.”

. See Louisiana Civil Code, Book II, Disposition Table. See also La. Civ.Code art. 759, Comments (a)-(c); and La. Civ.Code art. 8 (“Laws are repealed, either entirely or partially, by other laws. A repeal may be express or implied. It is express when it is literally declared by a subsequent law. It is implied when the new law contains provisions that are contrary to, or irreconcilable with, those of the former law....”); La. R.S. 24:176.

. We recognize that parties may contractually limit a servitude to an exclusive use and assign a period of time for the exercise of that use. See La. Civ.Code arts. 697, 705, and 749; Ashland Oil Co., Inc. v. Palo Alto, Inc., 615 So.2d 971, 974 (La.App. 1 Cir. 1993) (pipeline servitude agreement provided exclusive use of servitude as transportation of carbon dioxide and that servitude would terminate if not used for a period of twelve consecutive months).