WHIPPLE, C.J.
This matter is before us on appeal by plaintiff, Wilfred Robinson, III, from a judgment of the trial court granting Robinson's motion for partial summary judgment against defendant, Mighty One, LLC ("Mighty One"). For the reasons that follow, we affirm in part, reverse in part, and remand.
FACTS AND PROCEDURAL HISTORY
In June of 2013, Robinson contacted Keller Williams Realty ("Keller Williams") for assistance in purchasing undeveloped property on which to build a home. With the assistance of his agent, Lance Williams, Robinson ultimately entered into a "Louisiana Residential Agreement to Buy or Sell" ("the agreement" or "the contract") with Mighty One for the purchase of land and construction of a new home in Covington, Louisiana.
The agreement, dated December 13, 2013, provided that Mighty One would build a home for Robinson at a location to be determined at a later date, that upon acceptance, the parties would be bound to the terms of the agreement, and that upon acceptance, Robinson would provide a deposit in the amount of $9,000.00. The agreement, which was signed (initialed) by Robinson and Mighty One, also contained default provisions that would apply in the event of a default by either party, which set forth that the buyer or the seller suffering a default by the other party had the option to either declare the agreement null and void "with no further demand" or to demand and/or sue for: (1) termination of the agreement; (2) specific performance; or (3) termination of the agreement and an amount equal to 10% of the sales price as stipulated damages, and return or retention of the deposit. The default provisions further provided that the prevailing party to any litigation brought to enforce provisions of the agreement "shall be awarded attorney fees and costs." By its terms, the initial offer made in the December 13, 2013 agreement to buy or sell was made binding and irrevocable until December 17, 2013, at 5:00 p.m.
Thereafter, with regard to a final sales price for construction of the home, which *200 was to be determined after Robinson chose his lot, Mighty One subsequently proposed the following counter offer on December 17, 2013, at 3:20 p.m.:
The final sales price will be determined after Purchaser chooses lot location, house plans/specs and a new cost estimate is completed by the Seller. Both parties must agree to sign the new cost estimate and agree that estimate will be the sales price. From that point forward any additions, changes, [or] alterations must be made in writing, signed by both parties and paid for upfront by Purchaser and such payment shall be [nonrefundable]. The completion of the house must be within 180 days of the slab being poured. [Emphasis added.]
All other terms and conditions of the prior agreement were to remain in effect and the "Counter Offer" would be void if not accepted in writing by 5:00 p.m. on December 18, 2013. On December 18, 2013, at 10:19 a.m., Robinson responded to the counter offer extended by Mighty One by replacing it with a new counter offer, which was accepted and agreed upon by both Robinson and Mighty One respectively on December 19, 2013 and December 20, 2013, and provided as follows:
Buyers Deposit shall be refunded and the contract declared Null and Void in the event that a suitable property cannot be acquired by the Seller.
The Buyers Deposit Shall be refunded and the contract shall be Null and Void in the event that the total cost of the home exceeds $242,148.45 unless all parties agree prior to finalizing final cost estimate.
Deposit shall become nonrefundable once the lot to be built on is purchased by Seller/Builder. [Emphasis added.]
Pursuant to the above agreement ultimately accepted by the parties on December 20, 2013, Robinson then tendered a check in the amount of $9,000.00 to Mighty One as a deposit under the contract to purchase the lot he had chosen. On that same date, Mighty One, in turn, entered into an agreement to purchase with the listing agent, Gardner Realtors, to purchase the lot for $25,000.00. Mighty One then tendered a deposit check, using Robinson's funds, to Gardner Realtors in the amount of $9,000.00, with the closing on the lot scheduled for later in February.[1]
However, according to Robinson, on February 6, 2014, Robinson's agent informed him that Mighty One had decided to unilaterally terminate and cancel the contract. After being informed of this development, on February 7, 2014, Robinson requested that Mighty One return his deposit and provide him with a written cancellation "in order to move forward toward some resolution" as to his possible purchase of the property, all to no avail. Instead, after purportedly being unable to obtain a return of the deposit it had paid on the lot from Gardner Realtors, Mighty One then proceeded to complete, in its name, the purchase of the lot previously selected by Robinson, and on February 14, 2014, Mighty One closed on its purchase of the lot.
After the passage of several months without receiving the return of his deposit, on August 25, 2014, Robinson filed a "Petition for Breach of Contract and Fiduciary Duty" against: Mighty One; its owner and manager, Michael R. Chamberlain; and Keller Williams. Therein, Robinson sought *201 a judgment against Mighty One and Chamberlain ordering them to either specifically perform under the terms of the contract or, pursuant to the default provision of the agreement, return his deposit, along with ten percent of the sale price as liquidated damages, plus attorney's fees and costs associated with filing the petition, and "all damages allowed under the law."[2] Robinson further sought damages against Keller Williams for its negligent misrepresentation and/or breach of a fiduciary duty and attorney's fees and costs.
On July 24, 2015, Robinson filed a motion for partial summary judgment as to his claims against Mighty One setting forth: that Mighty One had defaulted and cancelled the agreement before it purchased the lot upon which the home was to be built; that he had requested a refund of his deposit on February 7, 2014; that Mighty One had refused to refund the deposit; and that Mighty One thereafter proceeded to purchase the lot on February 14, 2014, after the agreement was cancelled. Thus, pursuant to the default provision of the agreement between Robinson and Mighty One, Robinson sought judgment for a refund of his $9,000.00 deposit, stipulated damages under the contract in the amount of $24,215.00 representing ten percent of the purchase price, and attorney's fees and costs in the amount of $10,000.00 incurred by Robinson to litigate this matter.
In response, Mighty One opposed the motion for summary judgment, initially contending that the contract was cancelled on the basis of a lack of funding because funding in the amount of $242,150.00 was approved for the purchase of the lot and building of Robinson's home, Robinson had refused to stay within the agreed amount, and Mighty One had accordingly cancelled the contract. Mighty One further contended that the deposit paid by Robinson became nonrefundable once the lot was purchased by Mighty One as builder, and also contended that the contract became "null and void once [Robinson] exceeded the estimated building costs and therefore defaulted on [the] agreement." (Emphasis added.)
In a supplemental opposition memorandum, Mighty One reiterated its previous arguments, but claimed that while the contract contemplated a maximum total cost or amount not to exceed $242,148.45, Robinson wanted to make changes bringing the total cost above $282,000.00. In this supplemental opposition, however, Mighty One changed its earlier position and specifically denied ever cancelling the agreement, instead contending that "Keller Williams [had] declared the contract null and void" and that "the contract in fact was cancelled by Lance Williams of Keller Williams." (Emphasis added.) Mighty One further argued that, despite its requests, Keller Williams had refused to facilitate the return of the deposit check from Gardner Realtors once Keller Williams declared the contract null and void, contending that the deposit was nonrefundable.
Following a hearing, the trial court denied Robinson's motion for partial summary judgment, finding that there were unresolved material issues of fact as to whether the parties had actually modified the contract by a subsequent agreement that rendered the deposit non-refundable *202 as to Robinson. The trial court also found that there were unresolved material issues of fact as to the common intent of the parties, which precluded the grant of summary judgment.
However, after taking Chamberlain's deposition, Robinson re-urged his motion for partial summary judgment regarding his claims against Mighty One on June 26, 2016. Specifically, Robinson contended that while "opposing counsel [had] indicated that there was a subsequent agreement between the parties modifying the terms of the original contract," Chamberlain had admitted in his deposition testimony that there was, in fact, a binding agreement that had been reached by the parties in December 2013, and that he was not aware of any separate agreements with Robinson that modified the original contract. Accordingly, in view of this testimony, Robinson contended he was entitled to summary judgment in his favor for an award of damages, refunds, attorney's fees and costs in the amount of $47,690.85 for Mighty One's default under the terms of the agreement.
Following a hearing, the trial court issued reasons for judgment, finding that: (1) under the agreement, where the deposit would become non-refundable only after the lot chosen for construction was purchased by Mighty One and the undisputed evidence established that Robinson's request for refund of the deposit was made prior to Mighty One's purchase of the lot on February 14, 2014, Robinson was entitled to the return of his deposit; and (2) as the party asserting modification of the contract, Mighty One had the burden of proving a modification, and had failed to produce sufficient evidence to support its claim that there was such an oral modification of the agreement. However, the court then ruled that because Robinson and Mighty One had failed to agree to a final sales price in excess of $242,148.45, the agreement was subject to a resolutory condition, which, upon occurring, rendered the agreement null and void such that no rights would flow to either party. The trial court thus determined that Robinson was not entitled to attorney's fees or stipulated damages as provided for in the agreement. On September 16, 2016, the trial court signed a judgment in favor of Robinson and against Mighty One, in the amount of $9,000.00, representing a return of the deposit, plus legal interest from the date of judicial demand and all court costs, and dismissed "[a]ll other claims" against Mighty One with prejudice.[3]
Robinson now appeals, contending that the trial court erred in: (1) finding that there was a failure by the parties to agree to a final sales price, which constituted a resolutory condition that would result in the contract being null and void with no rights flowing to either party; and (2) failing to find that Mighty One had breached the contract, and in refusing to apply the remedies in favor of Robinson as provided for in the contract.
SUMMARY JUDGMENT
Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. Greemon v. City of Bossier, 2010-2828 (La. 7/1/11), 65 So.3d 1263, 1267. In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of *203 triable fact. All doubts should be resolved in the non-moving party's favor. Hines v. Garrett, 2004-0806 (La. 6/25/04), 876 So.2d 764, 765. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. Hines v. Garrett, 876 So.2d at 765-766.
A party may move for a summary judgment for all or part of the relief for which he has prayed. LSA-C.C.P. art. 966(A)(1).[4] A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties. LSA-C.C.P. art. 966(E). However, a summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time. LSA-C.C.P. art. 966(F).
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1). The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. LSA-C.C.P. art. 966(D)(2).
When a motion for summary judgment is made and supported as provided in LSA-C.C.P. art. 967, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in LSA-C.C.P. art. 967, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. LSA-C.C.P. art. 967(B). Whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Larson v. XYZ Insurance Company, 2016-0745 (La. 5/3/17), 226 So.3d 412, 417.
DISCUSSION
Contracts have the effect of law between the parties. LSA-C.C. art. 1983. Although summary judgment is generally not appropriate to establish the intent of contracting parties, where the words of a contract are clear, explicit and lead to no absurd consequences, the meaning and intent of the parties must be sought within the four comers of the instrument and cannot be explained or contradicted by parol evidence. See LSA-C.C. art. 2046 ; Claitor v. Brooks, 2013-0178 (La. App. 1st Cir. 12/27/13), 137 So.3d 638, 644-645, writ denied, 2014-0198 (La. 4/4/14), 135 So.3d 1182. Under such circumstances, the interpretation of the contract is a matter of law *204 and summary judgment is appropriate. H & E Equipment Services, Inc. v. Sugar & Power International, LLC, 2016-1070 (La. App. 1st Cir. 2/17/17), 215 So.3d 446, 449.
The interpretation of ambiguous terms in a contract requires construction against the contract's drafter. See LSA-C.C. art. 2056 ; Campbell v. Melton, 2001-2578 (La. 5/14/02), 817 So.2d 69, 75. Moreover, as pertinent to this appeal, parties may stipulate the damages to be recovered in case of nonperformance, defective performance, or delay in performance of an obligation. That stipulation gives rise to a secondary obligation for the purpose of enforcing the principal one. LSA-C.C. art. 2005.
In this case, the record demonstrates there was a contract entered into by the parties, and the contract was an "agreement to buy or sell" involving the construction of Robinson's home after the final price was calculated. Moreover, Mighty One has not appealed or answered this appeal, and therefore has not challenged the portion of the summary judgment awarding Robinson $9,000.00, representing a return of his deposit, plus legal interest from the date of judicial demand and all court costs in the proceeding below. Therefore, the propriety of this ruling is not at issue, and this portion of the trial court's judgment is affirmed.
As to the trial court's dismissal of Robinson's remaining claims against Mighty One for penalties pursuant to the default provision of the agreement, we note that, with respect to default by the seller , the agreement provided as follows:
DEFAULT OF AGREEMENT BY SELLER : In the event of any other default of this Agreement by SELLER except as set forth in lines 124 through 141 or lines 237 through 240, BUYER shall at BUYER'S option have the right to declare the Agreement null and void with no further demand, or to demand and/or sue for any of the
following: (1) Termination of this Agreement; (2) Specific performance; (3) Termination of this Agreement and an amount equal to 10% of the Sale Price as stipulated damages.
Further, BUYER shall be entitled to the return of the Deposit. The prevailing party to any litigation brought to enforce any provision of this Agreement shall be awarded their attorney fees and costs. The SELLER may also be liable for Broker fees.
Thus, in accordance with these provisions, Robinson contends he is entitled to the return of his deposit, 10% of the purchase price in stipulated damages in the amount of $24,215.00, attorney's fees, and costs due to Mighty One's unilateral decision to cancel the agreement. In support Robinson relies on the following attachments to his motion for summary judgment: (1) Robinson's affidavit; (2) the agreement and counter offer addendums; (3) a copy of Robinson's deposit check; (4) February 7, 2014 email correspondence between Lance Williams and Robinson; (5) the February 14, 2014 Act of Cash Sale in which Mighty One purchased the lot (and thereby acquired ownership of it); (6) Mighty One's answers to Robinson's requests for admissions of fact, interrogatories, and requests for production of documents; (7) invoices for Robinson's attorney's fees; and (8) Chamberlain's April 5, 2016 deposition testimony.
In opposition to Robinson's motion for partial summary judgment, Mighty One relies on: (1) the agreement and counter offer addendums; (2) a copy of Robinson's deposit check; (3) email correspondence between Keller Williams representatives and Robinson; (4) a copy of Mighty One's $9,000.00 deposit check to Gardner *205 Realtors; (5) a copy of the cash sale of the lot to Mighty One; (6) written correspondence from the Louisiana Real Estate Commission; and (7) the affidavit of Chamberlain.
Error in Rendering Summary Judgment with No Evidentiary Basis
(Assignment of Error Number One)
In his first assignment of error on appeal, Robinson contends that the trial court erred in its ruling by finding, on the evidence before it, that the parties failed to reach an agreement on the final sales price in excess of $242,148.45, and thus, that a resolutory condition of the agreement was established such that the contract was rendered null and void on this basis and no rights would flow to either party from the agreement. Based on our de novo review of the record, we agree that the trial court erred by ruling based on this premise.
The agreement herein specifically provided (and the parties do not dispute) that "The Buyers Deposit Shall be refunded and the contract shall be Null and Void in the event that the total cost of the home exceeds $242,148.45 unless all parties agree prior to finalizing the final cost estimate." (Emphasis added.)
Robinson contends that the only evidence presented on this issue shows that he and Mighty One agreed that the price of the home would not exceed $242,148.45, unless agreed to by both parties, that the final sales price would be determined after Robinson chose the lot and house plans, and a new cost estimate was completed by Mighty One. Robinson further contends that not only did he and Mighty One agree on a maximum price in the initial sales agreement, they also specified the method by which the price would eventually and ultimately be determined. However, before the house plans and a new cost estimate were ever completed so that a final price determination could be made or finalized, Mighty One instead advised him, through their respective real estate agents, that "it would not be building the house" for Robinson, then kept the deposit, and purchased the lot using Robinson's deposit. Robinson notes that the reason the record is utterly devoid of any evidence that the parties failed to agree to the price is because the contract was rescinded prematurely by Mighty One and, more importantly, any purported failure to agree to a price was not placed at issue in his motion for summary judgment. Robinson concludes that because the parties had agreed to a maximum price and/or a method by which the actual price would be determined, the contract was perfected and resulted in a valid contract to buy or sell that should be enforced in accordance with the terms contained therein. Robinson contends that, on summary judgment, no evidence, competent or otherwise, was set forth to establish or otherwise support the trial court's stated finding and conclusion that the contract was void and no rights would flow therefrom, because the parties had failed to agree on a purchase price. We agree that the record does not support this conclusion.
Although Mighty One offered an email from Robinson, which purports to set forth itemized costs, including a potential total cost figure of $282,358.09, neither the recipient, date, nor time of the email are identified. Moreover, the record contains no corroborating testimony or affidavit by either the unidentified recipient or sender of the email explaining the contents, purpose, and intent of this email. Importantly, the record contains no evidence to establish as an undisputed material fact that the parties ever agreed to this (or any other) total price, nor does it undisputedly show they failed to agree to a final price. Finally, *206 for the purposes of summary judgment, this email also fails to establish that Robinson failed or refused to stay within the agreed amount as alleged by Mighty One in defense of its refusal to return the deposit until after suit was filed.
Because the evidence set forth is insufficient to establish or resolve whether the parties ever agreed (or failed to agree) to a price in excess of $242,148.45, the trial court erred in finding from the evidence before it that the parties failed to agree to a price.[5] Thus, we find merit to this assignment of error.
Error in Failing to Enforce Contractual Remedies
(Assignment of Error Number Two)
In his second assignment of error, Robinson contends that the trial court erred in failing to find that Mighty One breached the contract and, as such, in failing to apply the remedies for the breach provided for in the parties' contractual agreement. In support, Robinson contends that the evidence of record shows that he was notified that Mighty One was not going to be building his home on February 6, 2014; that on that same date, he requested a refund of his deposit before the closing date on the lot where the home was to be built; and that Mighty One refused to build the home or return his deposit, thereby defaulting on the agreement. Robinson further points out that Mighty One proceeded to purchase the lot on February 14, 2014, although it was aware that construction would not commence.
As noted above, on the record before us, we are unable to determine whether Mighty One or some other third party actually breached the agreement, as the evidence before us does not establish as an undisputed material fact who cancelled the agreement. In his affidavit, Robinson contends that Chamberlain of Mighty One cancelled the contract, and Robinson's email correspondence to Lance Williams tends to support Robinson's claim that at no point did he wish to cancel the agreement.
However, in Chamberlain's version of these events, in Chamberlain's deposition testimony, he stated that the contract was cancelled when they couldn't agree on the "final, final, final price because things were changing so much," but, when later asked if Mighty One wanted to cancel the contract, Chamberlain replied, "No. Mighty One never wanted to cancel this *207 contract. We were not going there. We were trying to find a way to make it happen." Notably, Chamberlain further testified that the agreement was not cancelled by Mighty One or Robinson at any time in writing, and then testified that the contract was cancelled by Linda Larocca of Keller Williams, claiming that all communication with Robinson went through their respective agents. Thus, the evidence set forth on summary judgment is replete with contested issues of material fact as to who, in fact, cancelled this agreement and the actual circumstances giving rise to its cancellation or breach.
In sum, after a thorough review of the evidence presented before us on summary judgment, we are unable to determine whether Mighty One breached the agreement giving rise to damages where material facts as to how and who cancelled the agreement are unresolved in the record and remain in dispute. Accordingly, we are constrained to find that the trial court also erred in dismissing, with prejudice, Robinson's remaining claims for other awards that may potentially apply under the terms of the contract.
CONCLUSION
Based on the foregoing reasons, the portion of the September 16, 2016 judgment of the trial court, ordering Mighty One to return of Robinson's deposit, with interest, is hereby affirmed. The portion of the judgment granting summary judgment in favor of Mighty One, and dismissing all other claims against Mighty One, with prejudice, is hereby reversed, and this matter is remanded to the trial court for further proceedings consistent with the views expressed herein. Costs of this appeal are assessed against the appellees/defendants, Mighty One, LLC, and Michael Chamberlain.[6]
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
Chutz, J., concurs.

In his deposition testimony, Michael R. Chamberlain, the owner and manager of Mighty One, admitted that Mighty One had accepted Robinson's counteroffer and conceded that there was a binding contract between them as of December 19, 2013.

Chamberlain filed exceptions of no right and/or no cause of action seeking dismissal of Robinson's claims against him in his individual capacity. In response, Robinson filed a supplemental and amending petition alleging additional facts in support of maintaining Chamberlain as a defendant. Chamberlain's exceptions were ultimately denied by the trial court.

Because the judgment dismissed all of Robinson's remaining claims against Mighty One, the judgment is a partial final judgment subject to immediate appeal pursuant to LSA-C.C.P. art. 1915(A)(1) without the necessity of the trial court's certification as such.

As Robinson's motion to re-urge summary judgment was filed on June 26, 2016, we apply the version of LSA-C.C.P. art. 966, as amended by Acts 2015, No. 422, § 1, effective January 1, 2016.

Considering our conclusion that the trial court erred in finding that the evidence submitted established that the parties failed to agree to a price, we do not reach the issue of whether any such failure constitutes a resolutory condition. We do note however, that to the extent that the trial court relied on Williams v. Enmon, 380 So.2d 144, 146 (La. App. 1st Cir. 1979), writ denied., 383 So.2d 12 (La. 1980), in determining that the contract is null and void and no rights can flow to either party from such an agreement, the Williams case involved the nonfulfillment of a suspensive condition, not a resolutory condition.
Moreover, we note the issues Robinson presented to the court for consideration on summary judgment were his claims that "Mighty One cancelled the agreement before it purchased the lot," then refused to refund Robinson's deposit, thereby defaulting on the agreement. Notably, Mighty One did not file its own motion for summary judgment.
Under the strict mandates of LSA-C.C.P. art. 966, "A summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time." LSA-C.C.P. art. 966(F). As, Robinson notes in his reply brief:
There is no evidence in the record that the parties failed to agree to the price. Since price was not at issue [in] Robinson's Motion for Summary Judgment, the emails that Wilfred Robinson has to prove that the parties agreed to a price were not submitted to the trial court.

Although Keller Williams filed an appeal brief, it is not actually a party to these proceedings on appeal. Thus, we decline to assess costs against it.